UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MEGAN S.,

    Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

---

20-CV-00933-MJR
DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 17)

Plaintiff Megan S.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her application for Supplemental Security Income ("SSI") pursuant to the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's motion (Dkt. No. 14) is granted, defendant's motion (Dkt. No. 15) is denied, and the case is remanded for further administrative proceedings.

---

[1] In accordance with the District's November 18, 2020, Standing Order, Plaintiff is identified by first name and last initial.

## BACKGROUND[2]

Plaintiff filed for SSI on November 1, 2016, alleging a disability onset date of January 1, 2013. (Administrative Transcript ["Tr."] 266-71). The application was initially denied on January 6, 2017. (Tr. 165-70). Plaintiff timely filed a request for an administrative hearing. (Tr. 171-88). On March 13, 2019, Administrative Law Judge ("ALJ") Elizabeth Ebner held a video hearing from Falls Church, VA. (Tr. 29-75). Plaintiff appeared with her attorney in Buffalo, NY. A vocational expert also appeared. The ALJ issued an unfavorable decision on June 14, 2019. (Tr. 125-64). On May 21, 2020, the Appeals Council denied Plaintiff's request for review. (Tr. 1-6). This action followed.

## DISCUSSION

I. *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the

---

[2] The Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized in the moving papers.

Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.   *Standards for Determining "Disability" Under the Act*

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but

cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* §§404.1520(c), 416.920(c). Third, if the claimant does have a severe impairment, the

Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §§404.1520(d), 416.920(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §§404.1520(e), 416.920(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §§404.1545(a)(1), 416.945(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §§404.1520(f), 416.920(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* §§404.1520(f), 416.920(f). Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §§404.1520(g)(1), 416.920(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* §§404.1520(g)(1), 416.920(g)(1). If, however, the claimant cannot

adjust to other work, he or she is disabled within the meaning of the Act. *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.   *The ALJ's Decision*

At step one, the ALJ found that although Plaintiff was currently working and had worked during the period under review, she had not engaged in substantial gainful activity during the period of review. (Tr. 17-18). At step two, the ALJ found that Plaintiff had the following severe impairments: migraine headaches; brain stem lesion; arthritis; status post right knee injury; Raynaud's syndrome; neuropathy; arthralgia; myalgia; anxiety; and depression. (Tr. 18). At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18-19). Prior to proceeding to step four, the ALJ determined that Plaintiff retains the residual functional capacity ("RFC") to perform

> [S]edentary work . . . except operate hand controls frequently frequent overhead reaching; frequent reaching in all directions; frequent handling; occasional climbing ramps and stairs; no climbing ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling; cannot work at unprotected heights or be exposed to dangerous moving mechanical parts; only have occasional exposure to extreme cold, vibration, and bright lights such as sunlight; limited to simple routine tasks; limited to occasional changes in the work setting; and only occasional contact with co-workers, and the public.

(Tr. 19-22). At step four, the ALJ found that Plaintiff has no past relevant work. (Tr. 22). At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. (Tr. 22-23). Accordingly, the ALJ determined that Plaintiff has not been under a disability from November 1, 2016, the date the application was filed. (Tr.23).

IV.     *Plaintiff's Challenge*

Plaintiff argues that the case should be remanded because the ALJ erred by ignoring the opinions of Plaintiff's treating nurse practitioner that Plaintiff was unable to perform work on a full-time basis. The Court agrees.

When determining a claimant's residual functional capacity, the SSA's regulations require the Commissioner to evaluate every medical opinion in the record, regardless of its source. *See* 20 C.F.R. § 404.1527(c); *see also Pena v. Chater,* 968 F. Supp. 930, 937 (S.D.N.Y. 1997)*, aff'd*, 141 F.3d 1152 (Table), No. 97-6200 (2d Cir. Feb. 26, 1998); *Manuel v. Comm'r of Soc. Sec.*, No. 1:19-CV-00023-EAW, 2020 WL 2703442, at *3 (W.D.N.Y. May 26, 2020) (remand was warranted because the ALJ failed to weigh or discuss the limitations assessed by an examining acceptable medical source and the limitations conflicted with the RFC determination); *Javon W. v. Comm'r of Soc. Sec.*, No. 3:17-CV-1230 (CFH), 2019 WL 1208140, at *8 (N.D.N.Y. Mar. 13, 2019) (citing *Saxon v. Astrue*, 781 F. Supp. 2d 92, 103 (N.D.N.Y. 2011)) (finding the ALJ erred by failing to discuss or weigh the opinion of the plaintiff's treating nurse practitioner); *Parks v. Colvin,* No. 15-CV-6500-FPG, 2017 WL 279558, at *4 (W.D.N.Y. Jan. 23, 2017) (finding the ALJ erred by failing to evaluate medical opinions in the record).

On February 1, 2018, Plaintiff's treating nurse practitioner ("NP-BC") Erika Grose completed a Job Modification Request Application & Acknowledgement, in which she listed seven diagnoses for Plaintiff and found, "Due to the patient's current diagnosis, it is recommended that the patient work part time hours." (Tr. 1351).

On January 9, 2019, NP-BC Grose completed a Certification of Health Care Provider (Family and Medical Leave Act ("FMLA") of 1993). She indicated that Plaintiff required leave from December 19, 2018 to June 19, 2019 due to her serious health conditions. (Tr. 1138). She noted treating Plaintiff on October 19, 2017, January 5, 2018, February 1, 2018, February 15, 2018, March 27, 2018, and July 2, 2018. (Tr. 1138). She noted Plaintiff would receive further treatment for an indefinite period of time. (Tr. 1138). She explained, "Employee will need time off to attend follow up appts, testing during flare ups of symptoms including seizures, low blood pressure, dizziness." (Tr. 1138).

NP-BC Grose opined Plaintiff would need to attend follow-up treatment appointments and work part time or on a reduced schedule because of her medical condition. (Tr. 1138, 1139). She indicated the treatments or reduced number of work hours were medically necessary. (Tr. 1139). She noted an estimated treatment schedule would be based on pending neuro consultations on March 13, 2019. (Tr. 1139). She also opined Plaintiff's conditions would cause episodic flare-ups periodically preventing her from performing her job functions. (Tr. 1139). She further opined it was medically necessary for Plaintiff to be absent from work during flare ups because she "may experience [sei]zures, dizziness, headaches that require [her] to receive or seek medical attention". (Tr. 1139). NP-BC Grose additionally opined that based on Plaintiff's medical history and her knowledge of the medical conditions, Plaintiff would experience five

episodes of flare-ups every 6 months, lasting 8 hours per one week. (Tr. 1139). She explained that Plaintiff "will need to recuperate and seek medical care when flareups occur pending neuro appt". (Tr. 1143).

In her decision, the ALJ failed to address, or even mention, the opinions of NP-BC Grose that Plaintiff should be limited to part-time work. This was improper because she was required to consider all the medical opinions in the record. *See* 20 C.F.R. § 404.1527(c); *see also Fiducia,* 2017 WL 4513405, at *5; *Parks,* 2017 WL 279558, at *4.

While "an opinion from a nurse practitioner is not a medical opinion that is entitled to any particular weight," *Taylor v. Colvin,* No. 3:14-CV-0928, 2016 U.S. Dist. LEXIS 31312, at *16 (N.D.N.Y. Mar. 11, 2016), "an ALJ has an affirmative duty to address opinions by non-acceptable medical sources and explain the weight assigned to those opinions." *Pickett v. Colvin*, No. 3:13-CV-776, 2015 U.S. Dist. LEXIS 132298, at *23 (N.D.N.Y. Sept. 30, 2015) (*citing Saxon v. Astrue*, 781 F. Supp. 2d 92, 104 (N.D.N.Y. Mar. 4, 2011) ("The ALJ is free to conclude that the opinion of [an 'other source'] is not entitled to any weight, however, the ALJ must explain that decision")). Remand is warranted for evaluation of these opinions. *See Javon W.*, 2019 WL 1208140, at *8; *see also Parks,* 2017 WL 279558, at *4; *see also McKillip v. Comm'r of Soc. Sec.*, 2019 U.S. Dist. LEXIS 190201, at *9 (W.D.N.Y. Nov. 1, 2019); Allen v. Comm'r of Soc. Sec., 351 F. Supp. 3d 327, 335-36 (W.D.N.Y. 2018).

The ALJ's failure to evaluate NP-BC Grose's opinions was not harmless because they corroborated Plaintiff's testimony that she went home early while working at Key Bank because of spinning episodes when she stood, took medical leave four times, and was fired after having 48 unexcused absences and six write-ups. (Tr. 50, 51, 53-54, 63).

They also corroborate her testimony that she only works for 25 to 30 of her scheduled 40 hours a week by using FMLA, was "going through a really tough time" before getting FMLA, and was cleared for FMLA until June. (Tr. 39). In other words, the opinions corroborated Plaintiff's reports of being unable to perform full-time competitive employment "8 hours a day, for 5 days a week" on a sustained basis," or work 40 hours a week on a "regular and continuing basis." *See* SSR 96-9p, 1996 WL 374185, at *2 (S.S.A. July 2, 1996).[3]

## CONCLUSION

For the above reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 14) is granted, defendant's motion for judgment on the pleadings (Dkt. No. 15) is denied, and the case is remanded for further administrative proceedings.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:   August 1, 2022
         Buffalo, New York

_____
MICHAEL J. ROEMER
United States Magistrate Judge

---

[3] Plaintiff makes a second argument that the ALJ's physical RFC determination was not supported by substantial evidence because it was improperly based on a Single Decisionmaker opinion and the ALJ's own lay interpretation of bare medical findings. The defendant should also consider this argument on remand.